## BROWN v. UNIVERSAL LIFE INS. CO.
### No. 11245.

Court of Civil Appeals of Texas. Dallas.
June 17, 1933.

Rehearing Denied July 15, 1933.

W. J. Durham, of Sherman, for appellant.
Webb & Webb, of Sherman, for appellee.

JONES, Chief Justice.

Appellant, Alonzo Brown, instituted this suit in a district court of Grayson county to recover actual and exemplary damages against appellee, Universal Life Insurance Company, because of an alleged wrongful cancellation of two insurance policies. From a judgment in favor of appellee, based on an instructed jury verdict, appellant has duly prosecuted this appeal.

On August 5, 1929, appellee issued two insurance policies to appellant, numbered, respectively, 702046 and 294987. These policies each called for small weekly payments as premiums. Policy No. 702046 provides for sick, accident, and death benefits. The maximum sick benefit was $6 per week, and the maximum death benefit is $78. Policy No. 294987 is a life insurance policy, and provides for the payment of $128 on the death of the insured.

It is alleged that, on August 5, 1931, appellee illegally and wrongfully canceled both of these policies. At that time appellant was sick and permanently disabled from performing any character of labor. He appears to have been practically an invalid, spending a great deal of his time in bed, from the 1st of January, 1931, to the date of the alleged cancellation of the policies. Policy No. 702046 provides that: "This policy is a term contract, renewable on the option of the company on each anniversary date thereof, without prejudice to any pending claims, and the legal reserve on the life insurance element herein shall be computed and maintained accordingly." This policy also contains the following provision: "The insured shall not be entitled to any benefit for sickness or accidents under this policy, unless he or she shall first furnish the company or its authorized agent a certificate by a regular licensed practicing physician (satisfactory to the company), showing the nature of the sickness of injury, and the probable duration of the same, which must be compatible with the history of that class of complaints; and if the second or accidental disability of the insured shall continue for more than one week, a like certificate must likewise be furnished at the beginning of each week of sickness, or accidental disability. No liability for sickness or accidental disability shall begin to accrue under this policy for any action until such certificate is received as above set forth."

For the purpose of this decision, it will be assumed that appellant's petition alleged the correct measure of damages, resulting from the cancellation of an insurance policy in violation of the contract of insurance. There was medical testimony that, in his present condition, the probable life expectancy of appellant, at the time of the alleged cancellation of the policy, was ten years, and also that he would be an invalid, practically confined to his bed, during such time. An allegation of such condition is made the basis of the principal claim for actual damages. In addition to the claim for actual damages, appellant alleged that the breach by appellee of the insurance contracts was willful and attended by slanderous charges against appellant's character. The allegations in this respect are made the basis for a claim of $5,000, as exemplary damages.

At the close of the evidence, the trial court gave peremptory instructions to the jury to return a verdict in favor of appellee, and judgment was duly entered in accordance with this instructed verdict.

The undisputed evidence shows that, on

August 5, 1931, appellee's agent, one Guy James, visited appellant in his home and delivered to him a written notice canceling policy No. 702046? and that appellant received and read this written notice. Such notice is written on the stationery of appellee's district manager at Dallas, but bears the Sherman, Tex., date line of August 5, 1931; it is addressed to Mr. Alonzo Brown, and in effect notifies him that his health policy No. 702046 is canceled on and after the date of August 5, 1931. Such notice also informed him that such cancellation did not affect "your straight life policy. You may keep it up and we would be glad that you keep it up."

As to what else occurred on the occasion of this visit, the evidence of the parties present. is in sharp conflict. Appellant, his mother, and one other witness, in effect, testified that, when the agent James arrived at the house, appellant offered him money in payment of matured dues on the two policies; that James refused to accept said dues, informed appellant that his insurance was canceled, and handed him the notice above referred to. These witnesses also testified that James used opprobrious and slanderous epithets toward appellant. This is denied by James. The evidence is undisputed that James, of his own volition, had no authority to cancel insurance policies, but such cancellation could only come by authority of the general office at Memphis, Tenn.

■ As against a peremptory instruction, we must assume that James did inform appellant that his insurance was canceled, and that he did use the slanderous epithets against appellant. Does this evidence, when accepted as a true statement of what James said, raise an issue of fact as to the cancellation of policy No. 294987, and did appellee have the right to cancel policy No. 702046? The written notice shows that the latter policy was canceled from and after August 5, 1931.

■ August 5, 1931, is an anniversary date of the issuance of the policy. One of the provisions of the contract of insurance, above quoted, gave to appellee the clear contract right, on such date, to continue or discontinue policy No. 702046. This written notice shows that appellee exercised its right of option to discontinue said insurance policy on August 5, 1931. The exercise of such option being a contract right, and agreed to by appellant when he accepted the policy, he cannot complain of its exercise; hence no right of recovery, either for actual or exemplary damages, as to this policy, existed in appellant at the time of the trial of this case, and the peremptory instruction given by the court, in so far as it applies to the damages alleged because of the cancellation of said policy, was not error.

■ This record does not disclose any right existing in appellee to cancel the life policy. The testimony of appellee's district agent is that no such policy was canceled on said date, and that James, appellee's agent at Sherman, did not have the power to cancel said policy. What did the witness James mean when he told appellant that his insurance was canceled? If this language stood alone, it would bear the reasonable construction that he intended to convey to appellant the fact that both policies of insurance were canceled, but we cannot construe such language ·unmodified by the language of the notice he served, which indisputably restricts such language to policy No. 702046. This written notice specifically states that, "Your health policy No. 702046 is cancelled," but that "this does not affect your straight life policy. You may keep it up and we would be glad that you keep it up." We are of the opinion that this written notice, as a matter of law, shows that, when James orally informed appellant that his. insurance was canceled, reference was made only to policy No. 702046, and that the court did not err in giving peremptory instruction, in so far as appellant's cause of action rested upon the alleged wrongful cancellation of the two policies of insurance.

Appellant' alleged that, at the time of the cancellation of policy No. 702046, appellee was indebted to him on said policy for unpaid sick benefits in the sum of $105, and that on August 5, 1931, appellee owed him such sum of money for sick benefits. Does this record raise an issue as to appellant's right to recover such alleged indebtedness? If the record does raise such an issue, then appellant had the right to have the jury pass upon such issue, for the cancellation of the policy did not affect this accrued indebtedness.

■ This record shows that a number of weekly benefit claims had been paid to appellant during the year 1930, and also that eleven weekly benefit claims had been paid him during the months of January, February, March, and the first days of April in 1931. The evidence also raises the issue as to whether his physicial condition was such, after the last weekly benefit payment, in the early days of April, as to entitle him to make other weekly benefit claims. Under a provision of this insurance policy, above quoted, no claim for a weekly sick benefit matures until after a certificate of a regular practicing physician, specifically setting out the condition of the applicant, has been presented to appellee. This is a condition precedent to the right of recovery for a sick benefit. While the record discloses that, in the eleven claims paid in the early months of 1931, appellant furnished the required physician's certificate for each week for which the benefit was paid, this record does not disclose that the

required physician's certificate was furnished by appellant for the subsequent weekly claims, for which recovery is sought. Without such evidence, appellant had no right to recover such claims. There was therefore no error in the court's refusal to submit the issue of such claims to the jury.

It necessarily follows that, in our opinion, the court did not err in giving the peremptory instruction, and that this judgment must be affirmed.

`Affirmed.